UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| VERA G. GORDON, )<br>)<br>Plaintiff, )<br>v. )<br>) CASE NO. 4:07-cv-0042-DFH-WGH<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Vera Gordon seeks judicial review of a decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits under the Social Security Act. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Ms. Gordon was not disabled under the Social Security Act because she retained the residual functional capacity to perform a limited range of light to sedentary work with restrictions. Because the ALJ ignored the entire line of evidence concerning Ms. Gordon's frequent and severe headaches, a condition that the vocational expert said would disable her if her complaints were credited, the Commissioner's decision must be remanded for further consideration.

*Background*

Ms. Gordon was born in 1957. R. 41. At the time of her administrative hearing, she was forty-nine years old. *Id.* She graduated from high school and worked as an assembly line worker. R. 120, 123. Ms. Gordon alleges in this case that she became disabled August 10, 2005, due to headaches, right hip pain, neck pain, and carpal tunnel syndrome. R. 119-20.

In February 2004, Ms. Gordon filed her first application for disability insurance benefits alleging that she became disabled on February 2, 2004. R. 371. On June 7, 2005, Ms. Gordon's first hearing was held before ALJ Roland D. Mather. R. 16-23. ALJ Mather determined that Ms. Gordon was not disabled within the meaning of the Social Security Act and was therefore not entitled to a period of disability insurance benefits. *Id.* On October 14, 2005, the Appeals Council denied review. Ms. Gordon did not appeal further. R. 8-10.

A month earlier, on September 14, 2005, Ms. Gordon had filed a second application for disability insurance benefits, alleging disability beginning on August 10, 2005. R. 37. On September 21, 2005, Dr. Michael J. Moskal saw Ms. Gordon for complaints of pain in her neck, shoulders, elbows, wrists, and hand. R. 186. Dr. Moskal stated: "She states that she has pain that is 8/10, although she looks remarkably comfortable." R. 186. Further, Dr. Moskal stated "the patient's self-expressed losses of comfort and function associated with high visual analog scales are certainly discordant with physical examination," and found that

Ms. Gordon had normal strength and full range of motion in her neck, shoulders, elbows, and wrists. *Id.*

On October 7, 2005, MRIs of both shoulders were taken and Dr. Moskal concluded that her shoulders were intact and did not require surgery or therapy. *Id.* Dr. Moskal stated that Ms. Gordon's "strength is excellent, but she complains of pain diffusely." R. 182. On November 29, 2005, Ms. Gordon saw Dr. Richard P. Gardner for complaints of left arm, wrist, and shoulder pain, right hip and leg pain, and headaches. R. 218. Dr. Gardner found essentially full range of motion of the cervical and lumbar spine and five out of five bilateral grip strength in the upper extremities, and noted that she "could perform buttoning, zipping, and picking up a coin." R. 219.

On December 6, 2005, Ms. Gordon complained of arm and right leg pain with associated numbness and tingling to Dr. Lea Marlow. R. 246-48. Dr. Marlow referred Ms. Gordon to Dr. Lisa A. June for rheumatologic consultation. R. 243. Ms. Gordon told Dr. June that she was taking the following medications: Paroxetine (depression), Methotreaxate (arthritis), Lortab (pain relief), and Imitrex (migraine relief). *Id.* She reported being fatigued for many months, having pressure type pain in the left eye with migraines, and daily occipital to frontal headaches. R. 244. A screening test (ANA) revealed muscle and joint pain. *Id.* X-rays of the hands and right hip showed mild degenerative changes, but there was no evidence of erosions or inflammatory arthritis. R. 245.

On December 8, 2005, Ms. Gordon underwent a physical residual functional capacity assessment. Medical consultant Dr. W. Bastnagel determined that Ms. Gordon could lift and/or carry fifty pounds occasionally, frequently lift and/or carry twenty-five pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. R. 222. On December 12, 2005, Dr. Gange James completed a psychiatric review of Ms. Gordon. R. 229. Dr. James determined that she did not have any functional limitation under the "B" criteria of the regulations' listed impairments and determined that Ms. Gordon did not have a medically determinable mental impairment. R. 239, 241. On April 10, 2006, Dr. Fernando R. Montoya affirmed that assessment. R. 314.

On March 6, 2006, Ms. Gordon visited Dr. Greg N. Smith and complained of neck, right hip and wrist pain, and headaches. R. 302. He noted that Neurontin did not seem to help any of her pain or headaches. *Id.* After examining Ms. Gordon, Dr. Smith stated: "I think she is best termed a chronic pain syndrome. Antidepressants and Neurontin are commonly tried for this." R. 303. He noted that an EMG test on the right arm and leg revealed evidence of a very mild right median neuropathy at the wrist and a moderate right ulnar neuropathy at the elbow. R. 302.

Ms. Gordon consulted with Dr. Daniel A. Miller for a mental status examination on April 1, 2006. R. 304-13. Ms. Gordon indicated to Dr. Miller that

she had attempted suicide twice, with the most recent attempt in January 2006. R. 305. Dr. Miller noted that Ms. Gordon's mood and affect were sad and that she was "very withdrawn, subdued, passive, and reflective." *Id.* Ms. Gordon reported suicidal thoughts and loss of libido, and that her pain was ten on a scale of one to ten. R. 306. Dr. Miller concluded Ms. Gordon's current Global Assessment of Functioning (GAF) score to be between 55 and 60,[1] but noted that "the prognosis depends upon resolution of chronic pain in lower back, right hip, right leg, and severe headaches. I believe [Ms. Gordon's] depression would lift if she were gainfully employed, free of pain, and not struggling to make ends meet." R. 312. Dr. Miller also determined that Ms. Gordon was able to follow directions and to interact effectively with others, but "tends to decompensate under stress" and her concentration "appears to wane as a function of her pain." R. 313. He diagnosed Ms. Gordon with a "[m]ood disorder with major depressive features secondary to pain and physical limitations from right hip, right leg, lower back, and constant headaches." R. 312.

On April 18, 2006, Ms. Gordon sought treatment from physical therapist, Rob Roberts. R. 354. Roberts assessed Ms. Gordon as having an elevated first rib and bilateral neural tension, with the left greater than the right. R. 354-55. On April 21, 2006, medical consultant Dr. Joelle Larsen completed Ms. Gordon's psychiatric review. Dr. Larsen found mood disorder with major depressive

---

[1] A GAF score between 51 to 60 indicates moderate difficulty in social, occupational, or school functioning. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (DSM-IV).

features. R. 318. She rated Ms. Gordon's functional limitations in regards to the "B" criteria as follows: (1) no degree of limitation in activities of daily living; (2) mild degree of limitation in maintaining social functioning; (3) moderate degree of limitation in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation, each of extended duration. R. 325. None of the limitations satisfied the functional criteria. *Id.* Dr. Larson noted that Ms. Gordon attributed her depression to "pain and inability to work." R. 331.

After Ms. Gordon's second application for benefits was denied initially and on reconsideration, she asked for a hearing before an ALJ. ALJ Reamon held a hearing on September 25, 2006. At the hearing, Ms. Gordon testified in great detail about her headaches. She testified that she felt worse than she had since the first decision, partly because she had more headaches. R. 553. She stated that she had both "everyday" and "severe" headaches, with the "everyday" headaches lasting between four and six hours a day and the "severe" headaches occurring twice a week and lasting mostly all day. R. 555-57. She testified that she lay down and took nighttime medication and tried to sleep off her "severe" headaches, but did not really have much success. R. 557. She stated that her "severe" headaches "pull my eyes out, and it just hurts so bad I can't hardly raise my head and I see spots." R. 556. She also testified that her "severe" headaches were "what's really stopping me from really doing a whole lot." R. 573. She stated she had taken Neurontin for her headaches. R. 562. This testimony was supported by medical records. On December 6, 2005, Ms. Gordon had reported

to Dr. June that she was taking Imitrex for migraine relief. R. 243. She reported having pressure type pain in the left eye with migraines and daily occipital to frontal headaches. R. 244. On March 6, 2006, Dr. Smith noted that Neurontin was tried for her headaches but did not seem to help. R. 302.

A vocational expert testified about jobs that Ms. Gordon might be able to perform. Assuming the degree of impairment the ALJ ultimately found, the vocational expert testified that Ms. Gordon would not be disabled. If her subjective complaints were credited, however, the vocational expert concluded that Ms. Gordon would not have been able to work. R. 578-79. The "primary limiting factor," the vocational expert testified, would be the frequency of the headaches and the relatively long recovery period from them, as well as the limits in her ability to move her neck. R. 579.

*The Statutory Framework for Determining Disability and the ALJ's Decision*

To qualify for disability insurance benefits, a claimant must be disabled as that term is defined by the Act. To prove disability under the Act, the claimant must show that she was unable to engage in substantial gainful activity due to a medically determinable impairment that could be expected either to cause death or to continue for at least twelve continuous months. 42 U.S.C. § 423(d).

This standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*,

766 F.2d 284, 285 (7th Cir. 1985). Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether a claimant is disabled, the ALJ must apply the following five-step inquiry:

(1) Has the claimant engaged in substantial gainful activity? If so, she was not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that are severe? If not, she was not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, she was disabled.

(4) If not, could the claimant do her past relevant work? If so, she was not disabled.

(5) If not, could the claimant perform other work given her residual functional capacity, age, education, and experience? If so, then she was not disabled. If not, she was disabled.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); see generally 20 C.F.R. § 404.1520. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

Applying the five-step process, ALJ Reamon found that Ms. Gordon satisfied step one because she had not engaged in substantial gainful activity. At step two,

the ALJ found that Ms. Gordon had severe right carpal tunnel syndrome, but that the rest of her complaints were not severe. At step three, the ALJ found that the severity of Ms. Gordon's impairments, singularly or in combination, did not meet or equal any one of the impairments listed in the Listings.

At step four, the ALJ determined that Ms. Gordon's allegations of severe and disabling pain and limitations resulting therefrom were not supported by credible or other medical evidence and therefore could not be accepted entirely. R. 41. Based upon the review of the record and the opinion of the state agency consultant, the ALJ concluded that Ms. Gordon retained the capacity for a limited range of light to sedentary work. *Id.* The ALJ concluded that Ms. Gordon was unable to perform any of her past relevant work, which required medium to heavy exertion. *Id.* At step five, based on the testimony of the vocational expert, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that she could perform. R. 42.

The Appeals Council denied Ms. Gordon's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Ms. Gordon now seeks this court's review of the denial of her application. The court has jurisdiction in the matter under 42 U.S.C. § 405(g).

*Standard of Review*

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria." *Briscoe*, 425 F.3d at 351, quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based his decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305,

309 (7th Cir. 1996). This determination by the court requires that the ALJ's decision adequately discuss the relevant issues: "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe*, 425 F.3d at 351. An ALJ may not select and discuss only the evidence that favors his ultimate conclusion. The ALJ must minimally articulate reasons for rejecting or accepting specific evidence of disability so that a reviewing court can trace the path of the ALJ's reasoning. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). An ALJ may not ignore an entire line of evidence that is contrary to the ruling. See *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (remanding because ALJ improperly ignored three lines of evidence).

*Discussion*

The decisive problem here is that the ALJ failed to address the entire line of evidence about Ms. Gordon's allegedly severe headaches. The ALJ wrote: "She also reported problems due to daily headaches that last five to six hours at a time." R. 40. This statement is the only mention of the headaches in the entire decision, though Ms. Gordon testified about them in some detail, the severe headaches are documented in the medical records, and the vocational expert described them as the primary limiting factor that would render Ms. Gordon disabled if her complaints were credited. The failure to address this line of evidence requires a remand here.

An ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by objective medical evidence, but the ALJ may discount subjective complaints that are inconsistent with the evidence as a whole. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. § 404.1529. Social Security Ruling 96-7p describes the two-step analysis that the ALJ must perform in assessing subjective complaints of pain, such as headaches. See 20 C.F.R. § 404.1529; SSR 96-7p. First, the ALJ must determine whether "medically determinable physical or mental impairments" exist that could "reasonably be expected to produce the individual's pain or symptoms." § 404.1529; SSR 96-7p. If the ALJ finds that no impairment could reasonably cause the symptoms, then no symptom can be a basis for a finding of disability, no matter how genuine the complaints appear to be. SSR 96-7p. Second, once the ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of those symptoms. 20 C.F.R. § 404.1529(c). Objective medical evidence is not necessary to support allegations of the *extent* of the claimed symptoms, but neither ALJs nor the courts are "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states that she feels unable to work." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996), quoting *Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993); accord, 20 C.F.R. § 404.1529(d).

In this case, the ALJ concluded that Ms. Gordon met her burden of providing sufficient evidence of a medically determinable impairment that could

reasonably be expected to produce her alleged symptoms, but determined that Ms. Gordon's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." R. 40. Thus, the focus here is on the second phase of the inquiry, the "intensity and persistence" of Ms. Gordon's pain symptoms.

When a claimant complains of pain or other subjective symptoms, the ALJ must make a particular finding regarding the credibility of the claimant's statements about her symptoms and their functional effects. SSR 96-7p. An ALJ must state "specific reasons for the finding on credibility, supported by the evidence in the case record, [which] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

In this case, the ALJ ignored the entire line of Ms. Gordon's headache evidence. In his decision, the ALJ stated the following:

> Although the claimant may experience some discomfort after prolonged strenuous activity, the evidence shows she is able to use her back, arms and legs in a satisfactory manner. Treatment records demonstrate no significant motor or sensory deficits, muscle weakness or loss of control due to nerve damage. Diagnostic testing revealed only mild findings. The undersigned notes that no treating or examining physician has placed any significant limitations on her ability to perform work-related activities. She has no signs of radiculopathy related to her cervical stenosis and the most recent EMG testing revealed only mild carpal tunnel findings. The Administrative Law Judge does not discount all of claimant's complaints; however, there is very little objective evidence to support the claimant's allegation of a total inability to work.

R. 41.

The ALJ here addressed the objective medical evidence regarding Ms. Gordon's bilateral carpal tunnel syndrome and back and neck pain, but he failed to address the evidence about her headaches. In fact, although the ALJ acknowledged that Ms. Gordon "reported problems due to daily headaches that last five to six hours at a time," he did not address Ms. Gordon's headaches any further in his opinion. R. 40. He stated that while he "does not discount all of the claimant's complaints[,] . . . there is very little objective evidence to support the claimant's allegation of a total inability to work," R. 41, yet the decision contains no reasons why he found Ms. Gordon's testimony about her headaches unbelievable.

An ALJ must minimally articulate reasons for rejecting or accepting specific evidence of a disability, *Rice*, 384 F.3d at 371, and may not ignore an entire line of evidence that is contrary to the ruling, *Golembiewski*, 322 F.3d at 917. Because the vocational expert testified that Ms. Gordon's headaches would be the primary limiting factor rendering her disabled, if her complaints were credited, the error cannot be deemed harmless here, and remand is required here.

On remand, of course, the record might well support the ALJ's ultimate conclusion that Ms. Gordon was not disabled. The court has not ignored the indications that Ms. Gordon's subjective complaints seem much more severe than

seems indicated by physical examination and other observations. The ALJ's decision, however, cannot be upheld where "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); accord, *Steele v. Barnhard*, 290 F.3d 936, 941 (7th Cir. 2002). Because the ALJ failed to build an accurate and logical bridge in his analysis, a remand is required.

*Other Issues*: Ms. Gordon also contends that the ALJ erred by failing to find her bilateral carpal tunnel syndrome, degenerative disc disease, and affective disorder as "severe" at step two. Because the ALJ found Ms. Gordon's right carpal tunnel syndrome to be "severe," however, there was no reversible error at step two. As long as the ALJ proceeds beyond step two, as in this case, no reversible error could result solely from his failure to label a single impairment as "severe." The ALJ's classification of an impairment as "severe" or "not severe" is largely irrelevant past step two. What matters is that the ALJ considers the impact of all of the claimant's impairments – "severe" and "not severe" – on her ability to work. The ALJ did not commit reversible error in classifying Ms. Gordon's other impairments as "not severe."

The ALJ's decision was further compromised, however, by what appears to have been a mischaracterization of Ms. Gordon's residual functional capacity. In his decision, ALJ Reamon found that Ms. Gordon had "severe" right carpal tunnel syndrome and that she had the residual functional capacity "to engage in a limited

-15-

range of light to sedentary work[,] . . . limited to primarily one-handed work with lifting no more than one-half pound with her *left* arm and slight (4/5) loss of muscle strength in the upper extremities bilaterally." R. 39-40 (emphasis added). This restriction was the same restriction that ALJ Mather had found applied in the first decision, despite the fact that he found Ms. Gordon had severe bilateral carpal tunnel syndrome rather than severe right carpal tunnel syndrome. Finding severe right carpal tunnel syndrome but applying restrictions only to the left arm is inconsistent and needs explanation or correction.

*Conclusion*

For the foregoing reasons, the decision of the ALJ is hereby REMANDED to the Commissioner for further proceedings consistent with this order.

So ordered.

Date: November 13, 2007

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Tim Reidinger
timreidinger@sbcglobal.net